UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ROBERT RIGHI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07-cv-1064 |
| v. ) | |
| ) | |
| SMC CORPORATION OF AMERICA, ) | |
| *a corporation* and LOUIS KING, ) | |
| ) | |
| Defendants. ) | |

## O P I N I O N  &  O R D E R

Before the Court is Defendants' Motion for Summary Judgment, filed on August 29, 2008 (Doc. 24). Plaintiff filed a response in opposition on October 15, 2008 (Doc. 28), and Defendants replied on October 29, 2008 (Doc. 29). For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED.

### BACKGROUND

Plaintiff, Robert Righi, brought this suit under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601, et seq. Plaintiff alleges that his former employer, SMC, and direct supervisor, Louis King, ("Defendants") interfered with his right to take FMLA-qualifying leave for the purpose of attending to his mother's medical needs. Plaintiff's Complaint also appears to allege that Defendants discriminated or retaliated against him by terminating his employment after he missed work to care for his mother.

SMC hired Plaintiff in 2004 as a sales representative and assigned him to the company's Aurora, Illinois office. Although Plaintiff attended biweekly sales representative meetings at the Aurora office, he worked primarily out of his home in Henry, Illinois. Plaintiff reported to sales manager Louis King, and he interacted with King on a daily basis. (Defs.' SUMF ¶ 9). SMC generally contacted Plaintiff on his company-issued cell phone or on his home phone. Occasionally, Plaintiff would use the cell phone of Chuck Purtscher, his roommate and partner, to call or receive calls from King. (Defs.' SUMF ¶ 10). If Plaintiff wanted to contact King, he would call King's cell phone or King's Aurora office number, or Plaintiff would email King. (Defs.' SUMF ¶ 11). In his capacity as an SMC sales representative, Plaintiff was expected to work forty or fifty hours per week. (Defs.' SUMF ¶ 12).[1]

During Plaintiff's employment, SMC had a policy in place regarding vacation and paid time-off which required employees to notify SMC of their requested days off and to obtain approval. In addition, SMC had a written attendance policy, pursuant to which "[f]ailure to report for work for two (2) consecutive days without notifying your supervisor" was a ground for immediate termination. (Robert Righi Dep. Ex. 7, p. 3 ¶ 10).[2] Plaintiff was aware of these policies. (Defs.' SUMF ¶ 15).

---

[1] Plaintiff labels as "immaterial" any discussion of SMC's expectations regarding his work hours. The Court disagrees. Because Plaintiff worked primarily from home, Plaintiff's expected work hours have at least some relevance to the question of whether Plaintiff violated SMC's absenteeism policy. Because Plaintiff has not articulated a precise objection to his expected work hours at SMC as described by Defendants, the Court finds Defendants' description to be undisputed.

[2] Here again, Plaintiff labels as "immaterial" any discussion of SMC's attendance policy. Plaintiff argues that SMC's attendance policy is immaterial because "[Plaintiff] had notified SMC of the emergency need to take time off to attend to the

2

Generally, if Plaintiff needed time off for any reason, he would contact King via phone or email and inform King that he expected to miss work. Prior to July 2006, Plaintiff had never taken more than a day or two off for a personal illness or to care for his mother, Ann Righi, who resided with Plaintiff during his SMC employment. Ann experienced medical problems related to diabetes. (Defs.' SUMF ¶ 13; Ptf.'s Add. UMF ¶¶ 2-3).

In July 2006, SMC held a training session for its sales representatives in Indianapolis. Plaintiff was scheduled to attend the training in Indianapolis from July 9 to July 14, 2006 and from July 16 to July 21, 2006. In the early morning of July 11, 2006, while Plaintiff was in Indianapolis, Plaintiff's sister called to inform him that his mother had experienced a medical problem related to an insulin overdose. In response to this news, Plaintiff left the training session and drove home to Henry, Illinois to attend to his mother's well-being.[3] (Defs.' SUMF ¶ 20).

---

serious health condition of his mother." (Ptf.'s Resp. to Defs.' SUMF ¶ 5). Here again, the Court disagrees. First, whether or not Plaintiff satisfied the requirements of the attendance policy is a distinct issue from whether the attendance policy is material to this litigation. Second, Defendants' central argument in this suit is that Plaintiff was terminated solely for violating the attendance policy. Because Plaintiff has failed to precisely object or to adequately explain why the attendance policy is immaterial, the Court finds it material and undisputed that Plaintiff was subject to an attendance policy at SMC under which "[f]ailure to report for work for two (2) consecutive days without notifying [his] supervisor" was a ground for immediate termination. (Robert Righi Dep. Ex. 7, p. 3 ¶ 10). Plaintiff cannot avoid summary judgment by labeling as "immaterial" relevant facts that hurt his case.

[3] Plaintiff told a co-worker/roommate at the training session that he was leaving the training due to a family emergency. Plaintiff requested that the co-worker pass this information along to others at the training session. (Ptf.'s Add. UMF ¶ 6).

3

By the time Plaintiff arrived back at home on the morning of July 11, 2006, his mother's condition had stabilized. (Defs.' SUMF ¶ 21).

Meanwhile, King -- apparently unaware that Plaintiff had left the training session -- called Plaintiff's company-issued cell phone three times on July 11, 2006 to discuss business matters. (Defs.' SUMF ¶¶ 23-24). After receiving no response, King called Plaintiff again at 6:45 a.m. on July 12, 2006 and could not reach him. (Defs.' SUMF ¶ 25). At 9:05 a.m. on July 12, 2006, Plaintiff sent separate emails to King and to another SMC employee, notifying them that he had left Indianapolis because of his mother's illness. (Defs.' SUMF ¶¶ 26-27).[4] Plaintiff's email to King read as follows:

> Louie,
> Sorry, I did not get back with you before now I was at the hospital emergency room with my Mother. I have had to leave the training class due to this emergency. I have informed them in Indy of the situation. I talked to Kinta [sic] Joki and he told me not to worry about the training class and would reschedule. With out [sic] my care in the evenings my
> Mother took an incorrect dosage of insulin and went into a coma..I am her primary care provider. Of course my primary goal is the well being of my family as I am sure it is yours as well. This is why I returned from Indy.
> I need the next couple days off to make arrangements in an intermediate care facility for my Mother. This should solve alot of the

---

[4] The other SMC employee who Plaintiff emailed was Kenta Joki, an employee in SMC's Administration and Purchasing Department. (Defs.' SUMF ¶ 26). Joki replied to Plaintiff's email, indicating that the training could be rescheduled. Plaintiff represents that Joki was "in charge" of the Indianapolis training program; however, Plaintiff's response brief points to no evidence to support this vague proposition. To the contrary, Defendants point to evidence showing that Joki was merely responsible for <u>scheduling</u> the training session. (King Dep. at p. 19). Additionally, Defendants point out that Plaintiff has presented no evidence showing Joki's supervisory authority over Plaintiff.

4

problems I have been having. I do have the vacation time, or I could apply for the family care act, which I do not want to do at this time. I hope you can understand my situation and approve this emergency time off. I will be very busy the next couple of days to get things arranged so I might be slow getting back to you.

My job is very important to me and I know this has caused problems in the past. I am trying to resolve this so my job performance can improve, including call reports.

On the Boomarang issue, I do not have any items that I have been paid for that are still open on CC include. [sic]

Thanks,

Bob Righi . . . .

(Robert Righi Dep. Ex. 18).[5] It is undisputed that Plaintiff's mother did not visit an emergency room, a physician, or a health care provider during the two-week period beginning July 11, 2006. (Defs.' SUMF ¶ 34; Robert Righi Dep. at p. 151-52).

In response to Plaintiff's July 12, 2006 email message, King called Plaintiff's company-issued cell phone four times on July 12 (Wednesday), twice on July 13 (Thursday), four times on July 14th (Friday), twice on July 17th (Monday), and once on Tuesday, July 18th. (Defs.' SUMF ¶ 29). Plaintiff never answered or returned any of King's phone calls or messages. (Defs.' SUMF ¶ 29). By his own admission, Plaintiff had his company-issued cell phone turned off between July 11 and July 19, 2006. (Defs.' SUMF ¶ 30). Additionally, on July 17, while Plaintiff was apparently in Peoria, Illinois, King spoke with Chuck Purtscher, Plaintiff's partner/roommate,

---

[5] There is evidence that King relayed the information in Plaintiff's July 12, 2006 email to SMC's Human Resources Department. (Ptf.'s Add. UMF ¶ 10).

5

and asked Purtscher about Plaintiff.[6] (Defs.' SUMF ¶ 31; Ptf.'s Resp. to Defs.' SUMF ¶ 31). In response, Purtscher promptly relayed to Plaintiff that King had asked about him and that King had mentioned a need to "wrap this up." (Robert Righi Dep. at p. 162). King called Plaintiff's company-issued cell phone again on July 19, 2006 (Wednesday) and, again, Purtscher answered. During this call, King told Purtscher that he needed to speak with Plaintiff, and Purtscher relayed this message to Plaintiff. (Defs.' SUMF ¶ 32). In response, on July 19, 2006, Plaintiff contacted King.[7] King directed Plaintiff to come into the office the next day. (Robert Righi Dep. at p. 165). On July 20, 2006, King and Plaintiff met in SMC's Aurora office. Their meeting ended with King informing Plaintiff that Plaintiff was terminated for violating SMC's policy regarding absenteeism and call-ins. (Defs.' SUMF ¶ 36).[8]

On March 31, 2007, Plaintiff filed suit in federal court, alleging that Defendants violated his rights under the FMLA. Defendants answered the

---

[6] It is unclear whether King called Plaintiff's home phone and spoke with Purtscher or whether Purtscher called King to inquire about a job at SMC. (See Defs.' SJ Mem. at p. 8 n.4). Regardless, in his brief, Plaintiff seems to admit that King called Plaintiff's home phone on July 17, 2006 and left word for Plaintiff to call. (Ptf.'s Resp. to Defs.' SUMF ¶ 31). The Court will hold Plaintiff to this admission.

[7] At his deposition, Plaintiff testified that he had not spoken with anyone at SMC during the time King could not reach him via cell phone. (Robert Righi Dep. at p. 161).

[8] Upon terminating Plaintiff's employment, SMC paid him wages earned through July 10, 2006 and for four hours on July 20, 2006. SMC also compensated Plaintiff for his unused vacation time. (Defs.' SUMF ¶ 37).

6

Complaint on May 21, 2007. On August 29, 2008, Defendants moved for summary judgment.

## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met his burden, to survive summary judgment, the nonmovant must show through specific evidence that a triable question of fact remains as to an issue on which he bears the burden of proof at trial. Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); see Celotex, 477 U.S. at 322-24. The non-movant cannot rest upon the allegations in the pleadings or upon conclusory statements in affidavits; he must support his allegations with proper documentary evidence. Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997). It is not the Court's function to scour the record in search of evidence to defeat a motion for summary judgment. Instead, the Court relies on the non-moving party to identify the evidence which creates an issue of triable fact. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996).

7

The Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, the Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). If the record before the Court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In order for the non-movant to prevail, "there must be evidence on which the jury could reasonably find for [him]." Brownell v. Figel, 950 F.2d 1285, 1289 (7th Cir. 1991). However, in ruling on a motion for summary judgment, the Court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

## ANALYSIS

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq., permits eligible employees to take up to twelve weeks of unpaid leave during a twelve-month period for family or medical reasons. 29 U.S.C. § 2612. Upon returning from qualified FMLA leave, an employee has the right to be restored to the position he held prior to taking leave, or to an equivalent position. 29 U.S.C. § 2614(a)(1)(A), (B); Hubbard v. Blue Cross Blue Shield Ass'n, 1 F. Supp.2d 867, 873 (N.D. Ill. 1998).

8

A central purpose of the FMLA is to guarantee medically necessary leave to employees in a manner that accommodates the legitimate interests of employers. 29 U.S.C. § 2601; see Aubuchon v. Knauf Fiberglass, Gmbh, 359 F.3d 950, 951-52 (7th Cir. 2004).

The FMLA prohibits an employer from interfering with an employee's exercise of rights guaranteed by the Act. Caskey v. Colgate-Palmolive Co., 535 F.3d 585, 590 (7th Cir. 2008) (citing 29 U.S.C. § 2615(a)(1)). In addition, the FMLA prohibits employers from discriminating or retaliating against employees who have exercised FMLA rights. See Caskey, 535 F.3d at 592 (citing 29 U.S.C. § 2615(a)(2)); see also Callison v. City of Philadelphia, 430 F.3d 117, 119 (3rd Cir. 2005) (citing 29 U.S.C. § 2615(a)(1) – (2) and 29 C.F.R. § 825.220(c)). In the present suit, Plaintiff purports to be suing under an interference theory and a discrimination theory. (Compl. ¶ 12; Defs.' SJ Br. at p. 11).

I. Interference

To survive summary judgment under an interference framework, Plaintiff must present evidence sufficient to convince a reasonable jury that: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take FMLA leave; and (5) his employer denied the FMLA benefits to which he was entitled. See de la Rama v. Illinois Dep't of Human Servs., 541 F.3d 681, 687 (7th Cir. 2008); Murphy v. City of Chicago, 587 F. Supp.2d 877, 883 (N.D. Ill. 2008). What makes this case particularly unusual is that the "notice" Plaintiff

9

claims to have sent his direct supervisor regarding his need for family-medical leave (the July 12, 2006 email to King) explicitly stated, "I could apply for the family care act, which I do not want to do at this time." (Robert Righi Dep. Ex. 18). At his deposition, Plaintiff admitted that his reference to the "family care act" was meant to be a reference to the FMLA. (Robert Righi Dep. at p. 159). Plaintiff's argument is that, despite this seemingly unequivocal statement, his July 12 email nonetheless triggered an FMLA-based obligation on the part of SMC to (i) provide Plaintiff with FMLA-related forms and with a written copy of SMC's internal medical leave policy and (ii) further inquire into the details of Plaintiff's need for leave. In essence, the argument is that SMC was under a legal duty to ignore Plaintiff's own statement indicating that he was not interested in applying for approved family-medical leave. Plaintiff cites to no decision supporting this argument.

True, there are federal regulations indicating that once an employee gives his employer informal notice of a need for leave that is potentially FMLA-qualifying, the burden shifts to the employer to act affirmatively in processing leave. See 29 C.F.R. § 825.300(b)-(d), 825.303(b); see also Aubuchon, 359 F.3d at 953. But the regulations to which Plaintiff points do not contemplate situations where the employee's "notice" is accompanied by a clear statement that the employee is not interested in utilizing the company's mechanism for processing family or medical leave. See Ridings v. Riverside Med. Ctr., 537 F.3d 755, 766-67 (7th Cir. 2008) (affirming summary judgment for employer where employee indicated that she did not want to take FMLA leave); see also Smith v. Theramatrix, Inc., 2006 WL

1328860, at *2 (E.D. Mich. May 15, 2006) ("Plaintiff did not give adequate notice [to trigger her employer's duties under the FMLA]. . . . [because] she expressed that she did not wish to take FMLA leave.") (emphasis in original).

Situations do arise in which employees do not wish to use their reserve of FMLA leave. See, e.g., Ridings, 537 F.3d at 766; Wysong v. Dow Chem. Co., 503 F.3d 441, 448-49 (6th Cir. 2007). The present factual scenario fits that sort of mold, even though Plaintiff now claims in litigation that he did want to take FMLA leave after all. According to Plaintiff's argument, when an employee tells his employer that he does not want to dip in to his reserve of FMLA-guaranteed time-off, the employer may nonetheless be obligated to try and persuade the employee away from that position. The Court rejects this argument. If Plaintiff had excluded the "family care act" statement from his email, then it would have been reasonable for SMC to infer that it had a duty to process Plaintiff's request for leave in accord with FMLA requirements. But there is no denying that the statement was made or that it was unequivocal.

Plaintiff's response brief states that "[h]ad [Plaintiff] been given the information that SMC's policy requires, namely the explanation of the Family Medical Leave Act as attached to the Declaration of Joan Hensley, he would have known that he would not be required to take all twelve weeks at one time." (Ptf.'s SJ Resp. at p. 13). That argument is unreasonable because SMC conspicuously posted Department of Labor-compliant summaries of the FMLA's core provisions in each branch office. (8/27/08 J. Hensley Decl. ¶¶ 2-5 & Exs. 1-2 thereto). The

11

summaries, which were posted in SMC's Indianapolis and Aurora locations during Plaintiff's employment, clearly stated, "The FMLA permits employees to take leave on an intermittent basis or to work a reduced schedule under certain circumstances." (Ex. 1 to 8/27/08 J. Hensley Decl.). Plaintiff has presented no evidence to explain why he could not have simply glanced at the FMLA summary to test his alleged inaccurate presumption that he was required to take all twelve weeks of FMLA leave at one time. While the FMLA does place certain burdens on employers, it does not excuse employees from taking simple and reasonable measures to inform themselves of their rights under the Act.

In <u>Ridings</u>, the Seventh Circuit Court of Appeals stated, "If an employee does not wish to take FMLA leave but continues to be absent from work, then the employee must have a reason for the absence that is acceptable under the employer's policies, otherwise termination is justified." 537 F.3d at 769 n.3. The Court of Appeals' statement in <u>Ridings</u> is instructive here. The response brief points to no evidence suggesting that Plaintiff intended to invoke his rights under the FMLA when he sent the July 12 email to his supervisor, King.[9] The uncontroverted evidence suggests the opposite: that Plaintiff intended not to use his reserve of FMLA-guaranteed leave. Accordingly, as a matter of law, no FMLA-related duty of SMC's was ever triggered.

---

[9] As for the email to Joki, Plaintiff has presented no evidence that Joki was anything other than a co-worker. There is no evidence that Joki had any kind of supervisory authority over Plaintiff. Accordingly, there is insufficient evidence before the Court to convince a rational trier of fact that Plaintiff's email to Joki constituted "notice" to SMC.

Because Plaintiff decided not to utilize the FMLA, nothing shielded his leave of absence from the scope SMC's attendance policy, which he violated by failing to report to King on two consecutive workdays.[10]  (Robert Righi Dep. Ex. 7).  The FMLA does not require employers to reinstate employees who would not be eligible for reinstatement due to reasons unrelated to family or medical leave.  29 U.S.C. § 2614(a)(3)(B); Hubbard, 1 F. Supp.2d at 875.  It may be true that SMC could have gone to greater lengths to make sure that Plaintiff did not procedurally disqualify himself for his own job.  Someone in SMC's Human Resources Department could have tried to contact Plaintiff and ask him if he was sure he did not want to use FMLA time-off.  That may have been a considerate thing to do.  However, as a matter of law, given the unusual circumstances in this case, the company was under no FMLA-related obligation to do so.  See Morr v. Kamco Indus., Inc., 548 F. Supp.2d 472, 481 n.4 (N.D. Ohio 2008).

Even assuming that, somehow, Plaintiff's July 12 email to King was sufficient to invoke SMC's duties under the FMLA, the interference claim still fails because the uncontroverted evidence reveals that Plaintiff affirmatively avoided his supervisor's informal attempts to get more information as to how long Plaintiff was going to be away from work.  See 29 C.F.R. § 825.303(b); see also Collins v. NTN-Bower Corp., 272 F.3d 1006, 1008 (7th Cir. 2001) ("[E]mployers still are entitled to the sort of notice that will inform them not only that the FMLA may apply but also

---

[10] Under SMC policy, employee vacation requests were subject to company approval. (King Dep. p. 22; Robert Righi Dep. 104-05).  Plaintiff points to no evidence that SMC approved any vacation time covering his absence for the period July 12-18, 2006.

13

when a given employee will return to work."). In <u>Morr</u>, the district court encountered a relatively analogous scenario. In that case, a pregnant employee advised her employer that she anticipated a return from maternity leave six weeks after her expected delivery date. 548 F. Supp.2d at 476. Based on the employee's notice and an accompanying doctor's note, the employer set the employee's return date at May 7, 2007. Without informing her employer that she would need more time off, the employee showed up for work on May 14, 2007, at which time she was terminated pursuant to the company's absenteeism policy. The employee brought suit under the FMLA, arguing that her employer's reliance on the "6 wks post partum" return date was unjustified because that date was merely an informal estimate of the duration of her leave. <u>Id.</u> at 481. The district court rejected the employee's argument, holding that the employee's failure to adequately communicate with her employer and clarify her amended return date justified the employer's reliance on the initial return date. <u>Id.</u>

Similarly, in our case, Plaintiff's email to King stated that he would need a "couple days off." After receiving Plaintiff's email, King made numerous unsuccessful efforts to contact Plaintiff to determine when he would return to work. (King Dep. at p. 20; Defs.' SUMF ¶ 29).[11] Prior to July 2006, Plaintiff had never

---

[11] Although Plaintiff disputes the details of his July 19, 2006 conversation with King, Plaintiff has pointed to no evidence that would rebut King's deposition testimony that at least some of King's numerous calls to Plaintiff during the period of July 12-19, 2006 were made for the purpose of determining when Plaintiff would return to work. (King Dep. p. 20). In any event, no reasonable jury could find that King's approximately fourteen calls to Plaintiff following Plaintiff's July 12 email were unrelated to the request for time-off made in that email. Our case is

14

missed more than a day or two of work at SMC due to a personal illness or because of his mother's illness. (Defs.' SUMF ¶ 13). However, following his email to King, Plaintiff failed to contact King for the remainder of July 12 or on July 13, July 14 (Friday), July 17 (Monday), or July 18. Not only did Plaintiff fail to ever clarify his vague "couple of days" prediction to King or to anyone at SMC, he also turned off his company-issued cell phone (or at least made no effort to keep it on). In addition, Plaintiff failed to promptly respond after receiving word that King had called his home phone on July 17, 2006. It was only after King called again on July 19 that Plaintiff finally called him back. Even assuming, for the sake of argument, that the FMLA protected the first "couple days" of Plaintiff's July 12-18 period of absence, it was still Plaintiff's responsibility to keep his employer informed as to his precise return date.[12] Cf. Phipps v. County of McLean, 2008 WL 4534066, at *9 (C.D. Ill. Oct. 7, 2008) (employee's responsibility to confirm the date her employer expected her to show up for work following medical leave). It is clear in our Circuit that

---

distinguishable, for example, from Sons v. Henry County, 2006 WL 3135150, at *9 (S.D. Ind. Oct. 31, 2006), where the district court rejected the employer's argument of inadequate notice as to the employee's duration of leave. In Sons, the employer never made a follow-up inquiry into how long the employee would be away from work.

[12] Specifically, even if Plaintiff gave adequate notice of FMLA-qualifying leave for the period of July 12-14, 2006, he still failed to report to work on July 17-18. (See Ptf.'s SJ Resp. at p. 14). Those two consecutive unreported absences alone would have been cause for immediate termination under SMC's absenteeism policy. See Morr, 548 F. Supp.2d at 481 (an employee's absences following valid FMLA leave are as unprotected by the Act as if no FMLA leave were ever taken). It is worth noting that Plaintiff has failed to provide any support in the caselaw for his apparent suggestion (Ptf.'s SJ Resp. at Tab 2) that an agency's unemployment insurance benefit determination has a preclusive effect in this lawsuit regarding the end date of the relevant period of absence.

15

employees on leave cannot use the FMLA to "keep their employers in the dark about when they will return." Gilliam v. UPS, Inc., 233 F.3d 969, 971 (7th Cir. 2000).

Communication is critical in the employment setting, and the FMLA should not be construed in a way that gives employees an incentive to cause breakdowns in communication with their employers. In this case, Plaintiff does not dispute that he regularly communicated with SMC on his company-issued cell phone. Plaintiff offers no clear explanation as to why he kept the cell phone turned off during his absence. Therefore, the only reasonable inference is that Plaintiff was avoiding contact with SMC. In sum, no rational trier of fact could conclude, based on the evidence before the Court, that SMC denied Plaintiff any right that was due under the FMLA. Therefore, the Court grants summary judgment to Defendants on the interference claim.

## II.   Discrimination or Retaliation

In the context of a discrimination or retaliation theory, Plaintiff can proceed under either a direct or indirect method of proof. Under the direct method, to survive summary judgment, Plaintiff must present evidence sufficient to convince a reasonable jury that: (1) he was engaged in a statutorily protected activity; (2) his employer took a materially adverse action against him in the context of his employment; and (3) the first two elements were causally connected. Caskey, 535 F.3d at 593. Under the indirect method, Plaintiff must establish a prima facie case by presenting sufficient evidence that: (1) he was engaged in a statutorily protected

activity; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Id.

For the reasons stated in the previous section, Plaintiff has not presented evidence sufficient to convince a rational trier of fact that he was terminated for engaging in a statutorily protected activity. Nor has Plaintiff satisfied his burden, under the indirect method of proof, of producing sufficient evidence that SMC treated him differently than other similarly situated employees. Plaintiff has presented virtually no evidence of how SMC treated any other employee who could be fairly described as similarly situated to him. See Hull v. Stoughton Trailers, LLC, 445 F.3d 949, 952 (7th Cir. 2006). Therefore, Plaintiff has not met his burden of proof as to his discrimination/retaliation claim at the summary judgment threshold.

## CONCLUSION

Defendants' Motion for Summary Judgment is GRANTED.

CASE TERMINATED.

ENTERED this 27th day of February, 2009.

                                           s/ Joe B. McDade
                                           JOE BILLY MCDADE
                                           United States District Judge